IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-00460-FL

| | |
|---|---|
| LORI SEARLES, | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

Plaintiff Lori Searles ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [D.E. 15] ("Pl.'s Brief") seeking judgment in her favor, and Defendant's responsive brief [D.E. 17] in opposition ("Def's Brief"). The time for filing responsive briefs has expired pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, it is recommended that Plaintiff's brief [D.E. 15] be allowed, Defendant's brief [D.E. 17] be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on November 19, 2021, alleging disability beginning September 1, 2019. Transcript of Proceedings ("Tr.") 94,

197-200. Her claim was denied initially. Tr. 90-94, 106-10. Plaintiff filed a request for reconsideration (Tr. 111), and was denied upon reconsideration on June 6, 2022 (Tr. 95-100, 112-16). On June 14, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 117-18. A hearing before the ALJ was held on November 10, 2022, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 48-89. On December 30, 2022, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 15-31.

On January 30, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council (Tr. 193-96) and submitted additional evidence (Tr. 2, 32-47). The additional evidence consisted of (i) records from UNC Health, dated May 22, 2020 (Tr. 34-35), and (ii) records from Spectrum Orthopaedics, dated October 21, 2019 to July 22, 2020 (Tr. 36-47) (collectively "additional medical records"). On June 26, 2023, the Appeals Council denied Plaintiff's request for review, finding that the additional "evidence does not show a reasonable probability that it would change the outcome of the decision." Tr. 1-7. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large

or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11-CV-00054, 2012 WL 1836280, at *1 (W.D. Va. May 19, 2012) (quoting *Wilkins v. Sec'y, Dep't of Health & Hum. Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

3

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 27. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since September 1, 2019, the alleged onset date, through her date last insured ("DLI") of March 31, 2020. Tr. 20.

At step two, the ALJ determined that Plaintiff had the following medically determinable

4

impairments: mild obesity; medial meniscus tears, bilateral knees; degenerative joint disease of both knees; mild degenerative joint disease of the left hip with left, and fibular neuropathy; right foot drop; diabetes, tubular adenoma; breast mass; urinary tract infection; and hyperlipidemia. Tr. 21. However, the ALJ did not find that any of these impairments to be severe, and determined "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq*.)." Tr. 21-22. In making this assessment, the ALJ found that Plaintiff's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent" with the medical evidence and other evidence in the record. Tr. 23.

Accordingly, the ALJ found that Plaintiff was not disabled, at any time from September 1, 2019, the alleged onset date, through March 31, 2020, the DLI. Tr. 27.

## V. DISCUSSION

In this case, Plaintiff alleges that that the Appeals Council erred by failing to evaluate and consider the new and material evidence submitted at the Appeals Council. Pl.'s Brief. [D.E. 15] at 1.[1] The Commissioner argues that Plaintiff has not shown that "considering the late-supplied evidence to the Appeals Council, the ALJ's decision is so lacking in support that not even the modicum of evidence needed for substantial evidence (more than a mere scintilla but less than a preponderance) supports the ALJ's conclusions." Def's Brief [D.E. 17] at 2. The court is

---

[1] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [D.E. ] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

persuaded by Plaintiff's argument, in part, for the reasons discussed below.

At the administrative hearing before the ALJ on November 10, 2022, Plaintiff's counsel[2] noted that he had requested medical records from two medical providers in Maine – St. Mary's Regional Medical Center and Central Maine Healthcare – and that both facilities indicated that they had no medical records for Plaintiff. *See* Tr. 54. Additionally, Plaintiff's counsel noted that he had repeatedly requested records from Carolina Regional Orthopedics, but that they had not provided records corresponding to an arthroscopic debridement on Plaintiff's left knee that she claimed she had received at that facility. *See id.* Plaintiff's counsel requested that the record be kept open for such records. Tr. 86-87. However, he had not provided a five-day letter under S.S.R. 17-4p with respect to outstanding evidence, because the medical providers had informed him that no records existed, and he did not have any evidence to support his position. Tr. 87 ("I still have reason to believe that there are records there but I have no way of actually proving it except for [Plaintiff's] testimony today."). The ALJ declined to hold the record open and provided his opinion based on the evidence in the record at the time of the administrative hearing. *See* Tr. 88.

By the time Plaintiff's appeal came before the Appeals Council, Plaintiff had been able to obtain several missing records from Central Maine Healthcare and Spectrum Orthopaedics,[3] which she submitted to the Appeals Council. Tr. 36-47. Specifically, she provided records related to her diagnosis of bilateral carpal tunnel syndrome with positive Tinel's and Phalen's tests in October 2019, and November 2019, with records of a left carpal tunnel release procedure being performed on October 29, 2019. *See* Tr. 36-39, 47. The records also document an arthroscopy with

---

[2] At the November 10, 2022 administrative hearing, Plaintiff was represented by different counsel than the counsel currently representing her in the instant action.

[3] Plaintiff notes in her brief that "Central Maine Orthopaedic Ambulatory Surgery Center (*e.g.*, Tr. 47) is a jointly owned venture of Spectrum Healthcare Partners." Pl.'s Brief [DE-17] at 10 (citing Ambulatory Surgery Center (ASC) - Auburn - Spectrum Healthcare Partners (spectrumhcp.com)).

6

Case 5:23-cv-00460-FL   Document 18   Filed 08/13/24   Page 6 of 13

chondroplasty and debridement of the medial femoral condyle and debridement of the posterior horn of the medial meniscus, performed on Plaintiff's right knee on July 22, 2020. *See* Tr. 45. While this procedure occurred after Plaintiff's DLI, Plaintiff's brief appears to argue that it is still indicative of Plaintiff's disability before the DLI. *See* Pl.'s Brief [D.E. 15] at 5 (noting that this procedure was "just fewer than four months after [Plaintiff's] DLI," but that "it is reasonably related to[] the period adjudicated").

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins*, 953 F.2d at 96). "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Anderson v. Berryhill*, No. 5:17-CV-00143-D, 2018 WL 3750972, at *4 (E.D.N.C. July 5, 2018) (alteration in original) (quoting *Wilkins*, 953 F.2d at 95). "Only if the Appeals Council *grants* a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning." *Ellison v. Berryhill*, No. 7:18-CV-82-FL, 2019 WL 2970851, at *3 (E.D.N.C. Apr. 9, 2019) (emphasis in original) (quoting *Meyer*, 662 F.3d at 705).

Additionally, "[a] claimant seeking a remand on the basis of new evidence under 42 U.S.C.A. § 405(g) (West 1983) must . . . establish good cause for failing to present the evidence earlier." *Wilkins*, 953 F.2d at 96 n.3.

In denying Plaintiff's request for review, the Appeals Council determined that Plaintiff's

7

medical records (i) from UNC Health dated May 22, 2020, did not constitute new evidence "because it is a copy of records contained at Exhibit 8F, pages 86 to 87 [Tr. 558-59]" and (ii) from Spectrum Orthopaedics dated October 21, 2019 to July 22, 2020,[4] "do[] not show a reasonable probability that [they] would change the outcome of the decision." Tr. 2. Because the Appeals Council denied Plaintiff's request for review, it was not required to explain its determination regarding the two contested treatment records. *See Ellison*, 2019 WL 2970851, at *3 (finding that "the Appeals Council was not required to make findings of fact or explain its reasoning in determining that the new evidence would not change the outcome of the decision"); *Sutton v. Berryhill*, No. 5:17-CV-48-FL, 2017 WL 7053966, at *2 (E.D.N.C. Dec. 19, 2017) (finding that because "the Appeals Council did not grant review, [] therefore, it was not required to explain its reasoning for determining that the evidence submitted after the ALJ's decision did not warrant changing the ALJ's decision"). Nevertheless, the court must still consider whether the additional records are "new, material, and relate[] to the period on or before the date of the ALJ's decision and whether there is a reasonable probability that the additional evidence would change the outcome of the decision." *Randall v. Saul*, No. 2:19-CV-7-FL, 2020 WL 1046766, at *4 (E.D.N.C. Feb. 4, 2020) (citing *Wilkins*, 953 F.2d at 95; *Coleman v. Berryhill*, No. 6:17-CV-2613-TMC, 2019 WL 850902, at *3 (D.S.C. Feb. 22, 2019); *Kiro v. Berryhill*, No. CV 18-89 SCY, 2019 WL 1331903, at *5 (D.N.M. Mar. 25, 2019)). Here, for the reasons discussed below, the court finds that the new evidence is material, as there is a reasonable probability that it would have changed the outcome of the decision.

Plaintiff contends that the evidence from Central Main Healthcare is new and material

---

[4] As noted above, these records technically include medical records from both Central Maine Healthcare and Spectrum Orthopaedics, with the latter being a joint owner of the former. *See* Tr. 36-47.

evidence. Specifically, she argues that "[t]he evidence is 'new' because it was not part of the claim file, it is 'relevant' because it involves the issues adjudicated by the ALJ, and it relates to (or, in the case of the knee surgery, is reasonably related to) the period adjudicated." Pl.'s Brief [D.E. 15] at 5. Plaintiff further claims that "[t]his evidence would have reasonably impacted how the ALJ evaluated the supportability of [Plaintiff's] sworn testimony and would have also likely led to the inclusion of at least one severe impairment." *Id.* at 6.

Plaintiff argues that "the ALJ primarily denied [Plaintiff's] claim because of the lack of evidentiary support prior to her DLI." *Id.* at 6. The ALJ noted that "the medical evidence of record does not contain imaging studies, objective findings, or clinical signs regarding" Plaintiff's carpal tunnel syndrome. Tr. 21. Similarly, while the ALJ found Plaintiff's medial meniscus tears, bilateral knees and degenerative joint disease of both knees to represent medically determinable impairments, he noted that "there is no evidence for these impairments [occurring] prior to the claimant's DLI." Tr. 21. Additionally, the ALJ noted that the state agency physician's finding of an absence of functional limitations in Plaintiff, "appear[s] to be based upon a lack of evidence prior to [Plaintiff's DLI]". Tr. 24.

Plaintiff also argues that medical findings regarding her carpal tunnel syndrome bolster her statements and her husband's report that Plaintiff experienced difficulties using her hands. Pl.'s Brief [D.E. 15] at 7 (citing Tr. 237, 240); *see also* Mr. Searles' Function Report of Plaintiff (Tr. 232 (noting that Plaintiff's "hands give her a hard time [and she] needs constant help opening things"), 237 (noting that Plaintiff can only lift five pounds)); Plaintiff's Function Report of Self (Tr. 240 (reporting that she "can't lift much due to . . . hands" and has a "[h]ard time with handling/fingering/feeling in hand due to . . . [n]europathy"), Tr. 241 (reporting that she "need[s] help with fasteners, buttons, zippers [and] snaps" when dressing), Tr. 245 (reporting that Plaintiff

9

can only lift five pounds)).

It "is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation, provided the ALJ considers that impairment in subsequent steps." *Tarpley v. Astrue*, No. 5:08-cv-271-FL, 2009 WL 1649774, at *2 (E.D.N.C. Jun. 1, 2009)). Here, the ALJ did not find Plaintiff's carpal tunnel syndrome to represent a medically determinable impairment, and Plaintiff was found to be not disabled at step two of the sequential evaluation.

Plaintiff contends that proper consideration of the medical evidence related to Plaintiff's carpal tunnel syndrome and the support it would provide for her subjective limitations could be outcome determinative. Pl.'s Brief [D.E. 15] at 8. He reasons that because an inability to lift more than five pounds would limit her to the sedentary exertional level, which could in turn lead to a finding of disability based on her age.[5] *Id.*

As an initial matter, the undersigned finds that Plaintiff demonstrated good cause for not submitting the new medical evidence to the ALJ at the time of her administrative hearing. Plaintiff's counsel reported, and the undersigned finds no reason to doubt, that requests were made to the relevant medical providers, who for reasons outside of Plaintiff's control, reported that they did not have any of Plaintiff's medical records, only later to apparently determine that they did have such records.

The medical records documenting Plaintiff's carpal tunnel syndrome (Tr. 36-37), associated carpal tunnel release surgery (Tr. 47) and medical procedures on her right knee (Tr. 45) are new in that they were not included in the medical evidence presented to the ALJ and are neither duplicative nor cumulative. *See* Tr. 21 (noting no imaging studies, objective findings, or clinical

---

[5] Plaintiff was born on March 28, 1967 (*see* Tr. 261), therefore at the time of her DLI of March 31, 2020, she was 53 years old and a person closely approaching advanced age. *See* Appendix 2 to Subpart P of Part 404.

signs regarding Plaintiff's carpal tunnel syndrome); Tr. 25 (noting no history of right knee surgery).

The undersigned finds that the ALJ's refusal to find a medically determinable impairment in the absence of medical records from the relevant period was supported by substantial evidence. However, the undersigned correspondingly finds that medical evidence from the relevant period documenting a medical condition of carpal tunnel syndrome combined with Plaintiff's subjective limitations associated with her hands creates "a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96.

Accordingly, the undersigned RECOMMENDS that this case be remanded to the Commissioner for further proceedings. On remand, the Commissioner should consider the new medical evidence relating to Plaintiff's carpal tunnel syndrome. To be clear, the undersigned expresses no opinion on whether or not Plaintiff has any medically determinable impairments or severe impairments related to carpal tunnel syndrome or otherwise. It will be incumbent on the ALJ to consider all of the evidence before him, to explain his findings accordingly.

With respect to Plaintiff's argument that the medical procedures, including a debridement, on Plaintiff's right knee on July 22, 2020, were indicative of Plaintiff's disability before the DLI (Pl.'s Brief [D.E. 15] at 5); *see also* Tr. 45, the ALJ considered similar arguments with respect to medical records from May 2020, which were included in the Plaintiff's medical documentation at the administrative hearing, and rejected such arguments. *See* Tr. 25 (noting medical records from May 2020 that Plaintiff showed "no gait/station abnormality" and "was able to bear weight normally"). Accordingly, the undersigned does not find that Plaintiff's medical records of her medical procedures from July 2020, create "a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96. However, as the undersigned recommends remand for the ALJ to consider new medical evidence with respect to Plaintiff's carpal tunnel

11

syndrome, on remand, the ALJ should also consider medical records from Plaintiff's medical procedures in July 2020, as well as other medical records that were submitted to the Appeals Council.

## VI. CONCLUSION

For the reasons stated above, IT IS RECOMMENDED that Plaintiff's Brief [D.E. 15] be ALLOWED, Defendant's Brief [D.E. 17] be DENIED, and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 23, 2024**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by **the earlier of 14 days from the filing of the objections or September 2, 2024**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of**

Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this 13th day of August, 2024.

_____
Brian S. Meyers
United States Magistrate Judge